LOLLEY, J.
| aThis criminal appeal arises from the First Judicial District Court, Parish of Caddo, State of Louisiana. The defendant, Jimmy Ray White, was convicted of manslaughter, a violation of La. R.S. 14:31(A)(2)(a). Following a multiple offender hearing, White was adjudicated a fourth felony offender and was sentenced to imprisonment at hard labor for the remainder of his natural life without benefit of parole, probation, or suspension of sentence pursuant to La. R.S. 15:529.1. For the reasons set forth below, White’s conviction and sentence are affirmed.
Facts
Around 10:00 p.m. on December 28, 2007, Linda Swinney was driving home when her car stalled at the intersection of Linwood Avenue and Corbitt Street in Shreveport, Louisiana. Swinney activated the hazard lights and stepped out of her vehicle in order to attempt to push it out of the street. A group of young boys, including the victim, Adam Klingensmith, ^stopped to offer her help. As the boys attempted to push Swinney’s vehicle out of the roadway, a car came from behind at a quick rate of speed. One of the boys saw the car coming, tried to flag it down, and then yelled for everyone to get out of the way. The car did not stop, crashed into Swinney’s vehicle and kept going.
Initially, the boys thought that everyone had gotten out of the path of the oncoming vehicle. Although Adam could not be found, his shoes were found at the accident scene. Shreveport police officers were dispatched to the scene and confirmed that Adam could not be located. Meanwhile, a *1081 man unrelated to the accident came upon Adam’s body and instructed his friend to call for help. The police were notified that they had found the body of a white male lying face down in the roadway at Claiborne and Dowdell Streets, a little over a mile from where the accident took place. The fire department was called to the scene where Adam’s body was found, but no pulse was detected.
After investigating the accident scene at Linwood and Corbitt, as well as the location where Adam’s body was found, there was still no information concerning the identity of the driver of the vehicle that crashed into Swinney’s car. Swinney never saw the car before or after the impact and the boys could not identify the car or the driver. Bulletins were dispersed asking _]4for information from the public should anyone have knowledge of the incident.
Meanwhile, Ruthie Vailes was at the house of Rashida Kawana Chitman on the evening that these events took place. Chitman lived in the vicinity of the intersection of Linwood and Corbitt. At around 10:30 p.m. on‘December 28, 2007, Jimmy Ray White returned to Chitman’s home. He was nervous and upset and mentioned to Vailes, his sporadic girlfriend, and Chitman that he had been in a wreck on Linwood. White left Chitman’s house and went to his house, which was just around the corner.
The following morning, on December 29, 2007, Chitman heard a news broadcast requesting information related to the accident on Linwood. Chitman became suspicious and walked to Vailes’ and White’s home to tell White about what she had heard on the news. Chitman observed that White’s car was parked in the back of the house, which was not where it was normally parked. Chitman called the police, and a statement was taken from- her that implicated White as a suspect in the matter. Members of the Shreveport Police Department proceeded to White’s home where they observed in the backyard a vehicle with severe damage to the front of the car, especially the grill, the hood, and the windshield. Blood inside the car Rand all over the windshield was also observed. Vailes gave the police officers permission to enter the home, and White was arrested.
A bill of information was filed charging White with manslaughter in violation of La. R.S. 14:31(A)(2)(a). White waived arraignment and pled not guilty. After a jury trial, the jury unanimously found White guilty as charged.
Subsequently, the state filed a fourth felony habitual offender bill of information against White. A multiple offender hearing was held, but ruling on the multiple offender bill was deferred until after the sentencing hearing, at which the trial court found White to be a fourth felony offender. The trial court then imposed a mandatory sentence in accordance with La. R.S. 15:529.1, sentencing White to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. White’s motion for reconsideration of sentence was denied, and this appeal ensued.
Discussion
As stated, White was charged with Manslaughter, as defined in La. R.S. 14:31(A)(2)(a), which states, in relevant part:
A. Manslaughter is:
[[Image here]]
(2) A homicide committed, without any intent to cause death or great bodily harm.
lfi(a) When the offender is engaged in the perpetration or attempted perpetration of any felony not enumerated in *1082 Article 30 or 30.1, or of any intentional misdemeanor directly affecting the person ....
In this case, the state relied on felony hit- and-run as the underlying crime to support the conviction of manslaughter. Louisiana R.S. 14:100 defines the offense of hit-and-run driving and provides, in pertinent part:
A. Hit-and-run driving is the intentional failure of the driver of a vehicle involved in or causing any accident, to stop such vehicle at the scene of the accident, to give his identity, and to render reasonable aid.

Sufficiency of the Evidence

White brings two pro se assignments of error on appeal. First he argues that the evidence adduced at trial was insufficient to convict him of manslaughter. White contends that the state failed to produce evidence which proved beyond a reasonable doubt that he killed the victim while perpetrating a felony or intentional misdemeanor directly affecting the person, asserting that there was no evidence in this .case to show that he was engaged in the perpetration of either a felony or misdemeanor at the time of the accident.
The standard of appellate ■ review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential 17elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); State v. Tate, 2001-1658 (La.05/20/03), 851 So.2d 921, cert. denied, 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004); State v. Carter, 42,894 (La.App.2d Cir.01/09/08), 974 So.2d 181, writ denied, 2008-0499 (La.11/14/08), 996 So.2d 1086. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford, 2005-0477 (La.02/22/06), 922 So.2d 517; State v. Dotie, 43,819 (La.App.2d Cir.01/14/09), 1 So.3d 833, writ denied, 2009-0310 (La.11/06/09), 21 So.3d 297.
The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 1994-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part. State v. Hill, 42,025 (La.App.2d Cir.05/09/07), 956 So.2d 758, writ denied, 2007-1209 (La.12/14/07), 970 So.2d 529. Wfiiere there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, | snot its sufficiency. State v. Speed, 43,786 (La.App.2d Cir.01/14/09), 2 So.3d 582, writ denied, 2009-0372 (La.11/06/09), 21 So.3d 299.
Essentially, White argues that the state’s reliance on felony hit-and-run as the offense upon which the manslaughter charge is predicated is misplaced, -in that the hit-and-run occurred after the death, and thus not during the perpetration or attempted perpetration of any felony not enumerated in La. R.S. 14:30 or La. R.S. 14:30.1, or any intentional misdemeanor directly affecting the person. We disagree.
As defined above, hit-and-run driving is the intentional failure of the driver to stop, give his identity, and render reasonable aid. First, the testimony was entirely consistent that Wfliite failed to stop after hitting Swinney’s vehicle. Carl David Ferguson, Trey Cummings, and Darius Smith, Adam’s friends and the boys who helped *1083 move Swinney’s car out of the roadway, all testified that the oncoming vehicle which hit Swinney’s car (and was later determined to have been operated by White) never stopped after the collision with Swinney’s car and nobody ever returned to the scene to indicate that he had struck her vehicle. Swinney also confirmed that the car that struck her vehicle never stopped, and nobody ever returned to the accident scene to indicate having struck her vehicle.
1 3White likewise failed to reveal his" identity because he never returned to the scene of the accident. Although he told Vailes and Chitman he had been in an accident, he did not explain the true nature of the accident. White was only identified after Chitman called the police upon seeing the news story about the accident.
Finally, White failed to render reasonable aid to his victim. Adam’s body was discovered lying on the side of the road by third parties after being hit — it was those third parties who called for aid. Incidentally, we note that considering the extent of damage to White’s vehicle, it would be reasonable for the fact finder to conclude that White had to have known he hit someone — someone who would have needed assistance. From a review of the record, it is undisputed that White committed the felony of hit-and-run driving, which was a proper underlying offense for his manslaughter conviction — absolutely sufficient evidence of every element was present.
As a result of his committing a homicide while engaged in the perpetration of hit-and-run, the evidence concerning the cause of Adam’s death must also be examined to determine if it was sufficient to prove manslaughter. The state introduced numerous photographs into evidence, including photos of the smashed-in windshield of White’s vehicle, the blood-soaked interior of that same vehicle, and autopsy photographs of the |10victim’s severe injuries. Dr. Frank Peretti, the state’s forensic pathologist, testified concerning the numerous injuries sustained by the victim. He opined that head and chest injuries were the primary cause of Adam’s death, and that all of Adam’s injuries were consistent with' impact from an automobile. Dr. Peretti also collected some of Adam’s .blood for DNA testing, which was consistent with blood found in the passenger seat of the defendant’s car. DNA analysis also indicated that the blood found on White’s clothing was consistent with Adam’s DNA. Furthermore, the key to the damaged vehicle was found in the pocket of White’s overalls- that he wore when he went to bed on the night of December 28, 2007: The evidence was sufficient to prove that White committed homicide of Adam Klingensmith while engaged in the perpetration of felony hit- and-run driving, thus supporting his manslaughter conviction. This assignment of error is without merit.

Other Crimes Evidence

White also submits that the trial court erred by allowing evidence of his other crimes, acts, or wrongs, specifically, evidence and testimony concerning his possible intoxication at the time of the crime. He argues that intoxication is not an element of the crime of felony hit-and-run driving, and intoxication does not show motive, intent, or planning for the crime of hit-jand-run.n Moreover, he maintains that evidence of his intoxication only depicted him as a bad character and its effect was prejudicial to the extent that any probative value was outweighed.
Notably, prior to the taking of witness testimony, White filed a motion in limine based on the belief that the state would seek the introduction of evidence which showed that White was drinking and/or *1084 intoxicated at or near the time of the incident. The motion sought to exclude that evidence based on the assertion that it would not be relevant to the crime charged, any probative value would be outweighed by its prejudicial effect, and such evidence would constitute impermissible other crimes evidence. The trial court denied White’s motion based on the finding that the evidence was integral evidence, it was not impermissible other crimes evidence, and the probative value substantially outweighed any danger of unfair prejudice. We agree.
Generally, evidence of other acts of misconduct is not admissible because it creates the risk that the defendant will be convicted of the present offense simply because the unrelated evidence establishes him or her as a “bad person.” La. C.E. art. 404(B)(1); State v. Jackson, 625 So.2d 146, 148 (La.1993). This rule of exclusion stems from the “substantial risk of grave prejudice to the defendant” from the introduction of evidence regarding • his 112unrelated criminal acts. State v. Prieur, 277 So.2d 126, 128 (La.1973). However, evidence of other crimes may be admissible if the state establishes an independent and relevant reason, i.e., to show motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding. La. C.E. art. 404(B)(1); State v. Roberson, 40,809 (La.App.2d Cir.04/19/06), 929 So.2d 789. Even when the other crimes evidence is offered for a purpose'allowed under Article 404, the evidence is not admissible unless it tends to prove a material fact at issue or to rebut a defense. The probative value of the extraneous crimes evidence must outweigh its prejudicial effect. La. C.E. art. 403; State v. Jacobs, 1999-0991 (La.05/15/01), 803 So.2d 933, cert. denied, 534 U.S. 1087, 122 S.Ct. 826, 151 L.Ed.2d 707 (2002); State v. Hatcher, 372 So.2d 1024, 1033 (La.1979).
A trial court’s ruling on the admissibility of other crimes evidence will not be overturned absent an abuse of discretion. State v. Scales, 1993-2003 (La.05/22/95), 655 So.2d 1326, cert. denied, 516 U.S. 1050, 116 S.Ct. 716, 133 L.Ed.2d 670 (1996); State v. Gaston, 43,565 (La.App.2d Cir.09/24/08), 996 So.2d 480.
11sEvidence of other crimes, wrongs or acts may be introduced when it relates to conduct that forms an integral part of the act or transaction that is the subject of the present proceedings. La. C.E. art. 404(B)(1); State v. Colomb, 1998-2813 (La.10/01/99), 747 So.2d 1074; State v. Coates, 27,287 (La.App.2d Cir.09/27/95), 661 So.2d 571, writ denied, 1995-2613 (La.02/28/96), 668 So.2d 365. Such evidence of integral acts, or res gestae, is admissible under La. C.E. 404(B)(1) without requiring the state to give Prieur notice or the trial court conducting a Prieur hearing. State v. Boyd, 359 So.2d 931 (La.1978); State v. Mandosia, 36,827 (La.App.2d Cir.04/09/03), 842 So.2d 1252. The test of integral act evidence is not simply whether the state might somehow structure its case to avoid any mention of the uncharged act or conduct, but whether doing so would deprive its case of narrative momentum and cohesiveness, with power not only to support conclusions, but to sustain the willingness of jurors to draw the inferences, whatever they may be, necessary to reach an honest verdict. State v. Colomb, supra; State v. Gaddis, 36,661 (La.App. 2d Cir.03/14/03), 839 So.2d 1258, writ denied, 2003-1275 (La.05/14/04), 872 So.2d 519, cert. denied, 544 U.S. 926, 125 S.Ct. 1649, 161 L.Ed.2d 487 (2005).
In any event, the erroneous introduction of other crimes evidence is subject to harmless error review. State v. Rober *1085 son, supra; State v. Gatti, 39,833 (La.App.2d Cir.10/13/05), 914 So.2d 74, writ denied, 2005-2394 (La.04/17/06), 926 So.2d 511.
A trial error does not provide grounds for reversal of a defendant’s conviction and sentence unless it affects substantial rights of the accused. La. C. Cr. P. art. 921; State v. Johnson, 1994-1379 (La.11/27/95), 664 So.2d 94. The test is whether there is a reasonable possibility the error might have contributed to the conviction and whether the court can declare a belief that the error is harmless beyond a reasonable doubt. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); State v. Juniors, 2003-2425 (La.06/29/05), 915 So.2d 291, cert. denied, 547 U.S. 1115, 126 S.Ct. 1940, 164 L.Ed.2d 669 (2006). The reviewing court must find the verdict actually rendered by this jury was surely unattributable to the error. Johnson, supra.
Here, the witness testimony and physical evidence relating to White’s intoxication are minimal compared with the number of witnesses who testified at his trial and the number of exhibits introduced into evidence. Only two photographs of an empty beer can lying on the floorboard of the vehicle White was driving were introduced into evidence. Also, out of the 21 witnesses who testified at trial, only five witnesses testified regarding White’s intoxication, and one of those five witnesses testified that White |1fiwas not drinking. Neither the introduction of the two photographs of the empty beer can, nor the limited amount of witness testimony concerning defendant’s intoxication created a risk that White would be convicted of the offense of manslaughter because such evidence might have established him as a bad person, especially in light of the rest of the photographs introduced at his trial against him.
Considering the body of evidence against White supporting his conviction, we detect no error by the trial court allowing evidence of Whiteis intoxication. We agree that the testimony regarding White’s alcohol usage was properly admitted as res gestae evidence, and that the evidence explained the underlying cause of the accident and provided a motive for White’s commission of the crime of hit- and-run. Furthermore, even if the introduction of the evidence was in error, it was harmless considering the body of evidence against White. Here, the verdict is surely unattributable to any improper reference to White’s possible intoxication. This assignment of error is without merit.

Venue

In his final assignment of error, which is also pro se, White argues that the trial court erred in denying his motion for change of venue, which resulted in depriving him of his right to a fair trial by an impartial jury. He |1fiargues that the pretrial publicity, which allegedly included media coverage, direct mailings and inflammatory statements made by the assistant district attorney, prejudiced the public mind against him. White urges that the entire community knew of the incident and as a result, he was tried and; convicted in the minds of the community before he went to trial, thus he was entitled to trial in a different venue. We disagree.
Louisiana C. Cr. P. art. 622, pertaining to the grounds for change of venue, provides:
A change of venue shall be granted when .the applicant -proves that by rea7 son of prejudice existing in the public mind or because of undue influence, or that for any other reason, a fair and impartial trial cannot be obtained in the parish where the prosecution is pending. *1086 In deciding whether to grant a change of venue, the trial court shall consider whether the prejudice, the influence, or the other reasons are such that they will affect the answers of jurors on the voir dire examination or the testimony of witnesses at the trial.
A defendant is guaranteed an impartial jury and a fair trial. La. Const, art. I, § 16. To accomplish this end, the law provides for a change of venue when a defendant establishes that he will be unable to obtain an impartial jury or a fair trial at the place of original venue. La. C. Cr. P. art. 622; State v. Clark, 2002-1463 (La.06/27/03), 851 So.2d 1055, cert. denied, 540 U.S. 1190, 124 S.Ct. 1433, 158 L.Ed.2d 98 (2004). The trial court is given | I7much discretion in granting or denying a motion for change of venue. State v. Coleman, 32,906 (La.App. 2d Cir.04/05/00), 756 So.2d 1218, writ denied, 2000-1572 (La.03/23/01), 787 So.2d 1010.
Louisiana C. Cr. P. art. 622 places the burden of proof on the defendant to show that there exists such prejudice in the collective mind of the community that a fair trial is impossible. State v. Vaccaro, 411 So.2d 415 (La.1982). The defendant cannot meet this burden by merely showing that there is widespread public knowledge of the facts surrounding the crime or the defendant. Instead, “the defendant must show the extent of prejudice in the minds of the community as a result of such knowledge or exposure to the case before trial.” State v. Clark, supra, at 1057, citing State v. Frank, 1999-0553 (La.01/17/01), 803 So.2d 1. Thus, a defendant is not entitled to a jury entirely ignorant of his case and cannot prevail on a motion to change venue merely by showing a general level of public- awareness about the crime. State v. Thompson, 516 So.2d 349 (La.1987), cert. denied, 488 U.S. 871, 109 S.Ct. 180, 102 L.Ed.2d 149 (1988).
White filed a motion for change of venue on June 2, 2009. He argued that the pretrial publicity prejudiced the public mind against him. Specifically, he claimed that he was the subject of television commercials and direct mailings from the National Republican Congressional Committee hsin connection with a congressional race in which the former Caddo Parish District Attorney was a candidate, as well as numerous articles about Adam’s death in The Times, Shreveport’s daily newspaper. According to White, these articles included a front-page story that contained prejudicial remarks made by the assistant district attorney prosecuting the case.
On July 28, 2009, the trial court held a hearing on White’s motion, which was ultimately denied. The trial court concluded that a fair and impartial trial could be obtained in Caddo Parish. Furthermore, the trial court did not find that prejudice, influence, or any other reasons were such that they would affect the answers of the jurors on voir dire examination nor the testimony of witnesses at trial. The ruling on the motion was made with the caveat that White could re-urge its motion at the time of jury selection, and the trial court would accede to a request for individual voir dire of prospective jurors regarding any pretrial publicity, if urged by White or the state.
Jury selection began on August 24, 2009. A review of the voir dire transcript reveals that, at the outset, the state questioned each panel as to whether or not any of the venire members had heard anything about the case; a total of five potential jurors answered in the affirmative. All five venire members who indicated that they had prior knowledge of the case went |iathrough individual voir dire examinations. Both the state and defense were able to question these venire members regarding their knowledge of *1087 the case. After fully questioning the five venire members, the results were as follows: no challenges were made by the state or White as to two of the members; the state challenged one member for cause in which White joined, and the member was excused; and, White raised two challenges for cause, which were granted by the trial court and the members were excused.
Our review of the record shows that White and the state were both given full opportunity to explore each juror’s possible knowledge of the case and any preconceived opinions they may have had. Although the language of the political mailouts and the light in which those mailouts portrayed White was prejudicial, he failed to present evidence that there was prejudice in the collective mind of the community such that a fair trial would have been impossible. The limited number of venire members who had knowledge of the case were individually questioned by White and the state, and the trial court granted all three of White’s challenges for cause.
Moreover, White did not make any showing concerning the degree to which the pretrial publicity was circulated in the community at large. There was no evidence as to the number of people the mailing was sent out to, and there was no evidence regarding the circulation of the The Times article. Wej^also note that it is not at all uncommon for a criminal proceeding to receive media coverage; however, that fact alone does not mean that potential jurors have read the coverage or that they would even remember it. This assignment of error is without merit.
Conclusion
For the foregoing reasons, the conviction and sentence of Jimmy Ray White are is affirmed.
AFFIRMED.
APPLICATION FOR REHEARING
Before WILLIAMS, PEATROSS, DREW, MOORE and LOLLEY, JJ.
Rehearing denied.