STEPHEN J. WINDHORST, J.
|2The defendant, Morris Patin, was convicted of three counts of drug possession in the 24th Judicial District Court, Division “E.” For the reasons that follow, we affirm defendant’s convictions and sentences.
FACTS AND PROCEDURAL HISTORY
On February 24, 2012, the Jefferson Parish District Attorney filed a bill of information charging the defendant with: Count 1: Possession of 28 grams or more, but less than 200 grams of heroin, in violation of La. R.S. 40:966D(l)(a); Count 2: Possession of alprazolam in violation of La. R.S. 40:969C; and Count 3: Possession of oxycodone in violation of La. R.S. 40:967C. The defendant was arraigned on February 28, 2012, and pleaded not guilty to all counts. Following a hearing on May 9, 2012, the trial court denied the defendant’s motion to suppress evidence and statement.
|sOn July 10, 2012, the State filed a notice of intent to introduce proof of other crimes, wrongs or acts committed by the defendant, pursuant to La. C.E. art. 404B. Specifically, the State intended to introduce evidence related to a recent arrest of the defendant in New Orleans which oc *437 curred 22 days prior to the offense charged in the present case, as evidence of the defendant’s intent, knowledge, and absence of mistake or accident. The State asserted that in both the New Orleans case and in the present case, the defendant was in possession of similar amounts and classes of narcotics, and made similar denials to officers regarding the ownership of the contraband and whether he lived in the residences where the contraband was found. The State argued that the evidence would be of more probative value to the trier of fact than prejudicial to the defendant in the present case.
The hearing pursuant to La. C.E. art. 404B (hereafter “404B hearing”) took place on July 28, 2012. NOPD officers had conducted a controlled purchase from the defendant at a New Orleans residence and had executed a search warrant at the residence where they recovered evidence of drug dealing. The State argued that evidence seized in the defendant’s New Orleans arrest that occurred less than a month prior would be informative and relevant to show an absence of mistake, and would also be admissible as res gestae, because it was part of an integral act. The State also contended that at trial the defendant would argue that the contraband items belonged to defendant’s girlfriend, and that evidence showing intent and absence of mistake or accident would be very relevant to proving the charges in this case and to determining the owner of the controlled dangerous substances. The New Orleans case was still pending at the time of the motion hearing.
The defendant argued that any probative value of the State’s evidence, if any, was greatly outweighed by the prejudicial effect which would unduly influence the jury.
14At the conclusion of the 404B hearing, the trial court ruled in the State’s favor, allowing introduction of evidence of the New Orleans arrest, finding that the other acts as alleged showed an absence of mistake. The court noted that circumstances of the New Orleans case were the same as the present case. Most significantly, the defendant was observed by officers in a controlled-buy setting, and was again present in the residence when a search warrant was executed.
Trial Evidence and Facts
Lieutenant Donald Meunier and Detective Mark Layrisson of the JPSO narcotics division each testified about their participation in the surveillance and arrest of the defendant in Metairie on January 20, 2012. JPSO’s investigation began when Lieutenant Meunier was notified that officers of the New Orleans Police Department were seeking assistance with their surveillance of the defendant in the 4000 block of Hess-mer Avenue in Metairie, Louisiana. Lieutenant Meunier and Detective Layrisson, along with their team, assisted in the surveillance from about 10:00 A.M. until about 1:00 P.M.
While under surveillance, the defendant left the apartment driving a vehicle belonging to his girlfriend, Ebonee Williams, who was a passenger in the car. After observing defendant make traffic violations, the JPSO officers conducted a traffic stop. The officers informed Ms. Williams that defendant was under investigation for narcotics and obtained her written consent to search the apartment. Lieutenant Meunier advised defendant of his Miranda[1] rights. Believing that defendant resided with Ms. Williams, the officers presented him with the same consent to search form. Defendant refused to sign the form, but also denied living in the *438 apartment and said he did not have any property there. Based |son the consent of Ms. Williams, who was the lessee, the officers entered the apartment to conduct a search.
Detective Chris Henley, an NOPD canine handler, conducted a canine “sniff’ of the interior of the apartment. The dog, trained to detect narcotics, alerted to a dresser in the upstairs bedroom. Inside of a sock in the dresser, Detective Paul Smith recovered a clear bag containing individual bags of a tan powder consistent with heroin. Detective Layrisson testified that the bags were consistent with packaging intended for distribution, and the quantity and packaging indicated that the narcotics were obviously not for personal use. On top of the dresser, detectives found the defendant’s receipt for posting bail in the New Orleans case, which bore defendant’s name and listed his address as 4000 Hess-mer Avenue, Metairie. The receipt was admitted into evidence.
During a systematic search of the kitchen, the officers discovered a plastic bag containing rice and two additional clear bags of tan powder, several empty bags, and a clear plastic bag with white shards[2] all located at the bottom of a cereal box on top of. the refrigerator. Inside of the bag of rice, the officers found tan powder that later tested positive for heroin. Detective Layrisson explained that in his experience rice is commonly used to wick moisture from and preserve heroin. In a small plastic cup located in a kitchen cabinet were several tablets, later identified as alprazolam and oxycodone. The defendant’s Transportation Worker Identification Credential (TWIC)[3] was found on the kitchen countertop. Detective Layrisson also observed that the Adidas shoes and shoe boxes found in the apartment were consistent with the Adidas shoes worn by the defendant at the time of arrest.
| fiDuring Detective Layrisson’s interview with Ms. Williams, she indicated that she was renting the apartment and did not indicate that the defendant was a co-renter or co-inhabitant of the apartment. Ms. Williams was in possession of the apartment key, not the defendant. Detective' Layrisson acknowledged that the arrest ■affidavit listed a different address for the defendant, and that he did not have any indication that Defendant was a resident of the apartment at the time of his arrest (other than the receipt for bail). Ms. Williams informed Detective Layrisson that she purchased the clothing in the apartment for the defendant, but there was no indication of whether the defendant had ever worn them. Ms. Williams denied ownership and knowledge of the substances but did not accuse the defendant. She was not arrested.
On re-direct examination, Detective Layrisson explained that in his experience drug dealers would not keep narcotics or other evidence related to intended distribution on their person, but would utilize a “stash house,” an apartment or storage facility not registered in the suspect’s name where the suspect would store narcotics and money.
Called as a prosecution witness, Ms. Williams testified that although the defendant did not live with her and his name whs not on the lease, he would sometimes spend the night at her apartment on Hess-mer Avenue. The defendant did not have *439 a key to her apartment, and Ms. Williams would only allow the defendant to use her key when she was present, or to run errands, such as to purchase food. Ms. Williams testified that the defendant was the only person who visited her apartment other than maintenance workers, except for a female friend who lived in Texas that had last visited more than one month before the Metairie arrest.
|7Ms. Williams indicated that the men’s clothing in her apartment belonged to the defendant, and that she bought them for him, including Adidas sneakers and a pack of t-shirts and jeans, which she identified as the items located by the officers. She also stated that she did not use the dresser drawer in the bedroom, and that the items in the dresser, including the socks, belonged to the defendant, and she did not have any other boyfriend who came over at that time.
Ms. Williams also testified that the defendant never told her anything about the drugs. Although she spoke to the defendant regarding his earlier arrest in New Orleans, he-only stated that he was at the wrong place at the wrong time and was unwilling to discuss it. She had never seen the- defendant with any illegal substances, which was something she would not tolerate. Ms. Williams testified that the District Attorney’s office did not give her immunity or promise her anything in exchange for her testimony, which was the truth.
Detective Michael Dalferes of NOPD narcotics testified that on December 29, 2011, he was conducting surveillance at 2031 Dumaine Street in New Orleans. After observing what he believed to be narcotics activity, he had obtained and executed a search warrant of the residence. Sergeant Jeff Sislo, an officer in charge of the NOPD’s major case narcotics unit, testified that he coordinated the execution of the search warrant and was one of the supervisors on the scene. When the officers approached the door and announced themselves as police officers, they heard footsteps running away from the door and forced entry into the residence. Sergeant Sislo detained the defendant as he fled to the back of the house. The officers also detained two other subjects discovered in the residence.
Sergeant Sislo testified that the officers informed the defendant that they had a search warrant, and Detective Dalferes advised him of his Miranda rights. Different officers searched different areas of the residence. Sergeant Sislo |srecovered exactly $7,000.00 in various denominations of bills from a shoe box in the living room. The defendant and the other .subjects denied any knowledge of the money. Sergeant Sislo also discovered a bag containing several bags of small syringes, commonly used by heroin addicts, located in a non-functional furnace.
During the search of the residence, the officers retrieved one .40 caliber semiautomatic Gloek, 20 small bags of powder cocaine, 23 pieces of crack cocaine, 12 individual bags of heroin, 22 bags of marijuana, and a pill bottle containing approximately 44 tablets of alprazolam. The officers also discovered two bags containing a white powdered substance used to cut cocaine. The officers also seized two scales, which Detective Dal-feres explained are used to weigh drugs in grams. The officers also found an open box of sandwich bags, which Detective Dalferes explained are commonly used for “bagging up,” or cutting the corners off the bags and tying them, to package crack cocaine and heroin.
The NOPD officers placed the defendant under arrest, and Sergeant Sislo conducted a search incident to arrest. When the defendant stood up, officers noticed the *440 key to the residence on the floor at defendant’s feet. Sergeant Sislo also recovered $505.00 from the defendant’s pants pocket. The money was in various denominations of bills and was suspected to be proceeds from narcotics sales. During cross-examination, Sergeant Sislo acknowledged that he had no personal knowledge of the key having been on the defendant’s person.
After the defendant was released on bond, the NOPD officers conducted additional surveillance, and observed the defendant at the Metairie apartment, where they suspected he was storing drugs. Detective Dalferes explained that in his experience drug dealers would use a “stash house” to store drugs separately from where they conduct deals in order to avoid drawing attention to where the ]9bulk of their money and narcotics were located. Detective Dalferes later informed the JPSO narcotics unit of their investigation.
The State also offered and the trial court admitted, without objection, the following physical evidence seized in the NOPD case: the .40 caliber Glock; a plastic bag containing 12 individual bags of heroin; a bag containing 23 pieces of crack cocaine; powder cocaine; 22 individually wrapped bags of marijuana; two bags of non-narcotic white powder (cut); 44 tablets of alprazolam; a digital weight scale; a weight max scale; several bags of small syringes; and sandwich bags. As each exhibit was offered, the trial judge asked defense counsel if he had any objection. To each of these exhibits, defense counsel affirmatively stated that he did not object, and the court admitted them into evidence. When the State moved to publish them to the jury, again the defense counsel stated that he did not object.
The State also offered State’s Exhibit 27, which was a bag of heroin seized from the person of the defendant at the lockup, to which the defendant objected. The trial judge sustained the defendant’s objection, and that evidence was excluded.
The State also offered State’s Exhibit 30, which was a key to the New Orleans apartment found at the defendant’s feet, to which the defendant objected. The trial judge overruled defendant’s objection and admitted the key.
The defense entered into a stipulation with the State that if the chemical experts in both the New Orleans case and the present case were called to testify, their testimonies would be consistent with the reports each of them had prepared regarding the substances which tested positive, and the weight of each.
The twelvé-person jury returned a verdict of guilty as charged. On July 31, 2012, the trial court denied the defendant’s motion for new trial. On the same date, after waiving sentencing delays, the defendant was sentenced to 15 years [ ^imprisonment at hard labor on count one, and five years imprisonment at hard labor on both counts two and three. The trial court ordered all counts to be served concurrently and gave the defendant credit for time served. The court ordered that the first five years of the defendant’s sentence on count one be served without benefit of paroíe, probation, or suspension of sentence. On the same date as the sentencing, the State filed a habitual offender bill of information in open court charging defendant as a third felony offender. Defendant stipulated to his status as a third felony offender. Thus, the trial court vacated defendant’s original sentence on count one and resentenced him, pursuant to La. R.S. 15:529.1, to 20 years imprisonment at hard labor with credit for time served. The court ordered defendant’s sentence to be served without benefit of probation or suspension of sentence. The court further ordered the habitual offender sentence on count one to be served concur *441 rently with the other two sentences. Defendant now appeals.
LAW AND ANALYSIS
In his sole assignment of error, the defendant argues that the trial court erred when it allowed the State to introduce evidence of his arrest for narcotics offenses in New Orleans, which occurred less than a month prior to the defendant’s arrest in the present case. Defendant argues that the evidence in the previous case was introduced as though it was evidence in the present case.
The State asserts that the trial court did not abuse its discretion in admitting the other crimes evidence from the New Orleans case, but rather, the trial court admitted the evidence for the limited purpose of whether it tended to show motive, opportunity, intent, preparation, plan, knowledge, identity, and/or absence of mistake or accident.
^Evidence Admitted Without Objection
The defendant contends that admission of the physical evidence seized in the New Orleans case and displayed to the jury in this case was reversible error. The defendant, however, offered no objection to the testimony, nor to the majority of physical evidence at the time the State’s exhibits from the New Orleans case were offered into evidence by the State, even when asked repeatedly by the trial judge.[4] Accordingly, we may not review the trial court’s admission of other crimes evidence admitted at trial because those objections were not preserved for appeal in the absence of a contemporary objection.
In order to preserve the right to seek appellate review of an alleged trial court error, the party claiming the error must state an objection contemporaneously with the occurrence of the alleged error, as well as the grounds for that objection. La.C.Cr.P. art. 841A; State v. Berroa-Reyes, 12-581 (La.App. 5 Cir. 1/30/13), 109 So.3d 487, 498; State v. Richoux, 11-1112 (La.App. 5 Cir. 9/11/12), 101 So.3d 483, 490-491, writ denied, 12-2215 (La.4/1/13), 110 So.3d 139; State v. Alvarez, 10-925 (La.App. 5 Cir. 6/29/11), 71 So.3d 1079, 1085. Defendant is limited on appeal to matters to which an objection was made, but also to the grounds for his objection articulated at trial. State v. Jackson, 450 So.2d 621 (La.1984); State v. Baker, 582 So.2d 1320 (La.App. 4 Cir.1991), writ denied, 590 So.2d 1197 (La.1992), cert, denied, 506 U.S. 818, 113 S.Ct. 62, 121 L.Ed.2d 30 (1992).
La.C.Cr.P. art. 841A provides, in part, that “an irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence.” The purpose of the requirement of a contemporaneous objection is to put the trial judge |12on notice of an alleged irregularity so that he or she may cure a legitimate problem and prevent the defendant from gambling for a favorable verdict and then resorting to appeal on errors that might easily have been corrected by an objection. State v. Styles, 96-897 (La.App. 5 Cir. 3/25/97), 692 So.2d 1222, 1228, writ denied, 97-1069 (La.10/13/97), 703 So.2d 609. A contemporaneous objection allows opposing counsel to reply or to correct the prob *442 lem, and may also prevent the error entirely. In this case, the defendant’s assent to admission of the physical evidence and the lack of any objection precluded the trial judge’s contemporaneous consideration of whether the volume and nature of evidence had become excessive and had reached the point at which the any prejudicial effect would outweigh the probative value. In fact, the trial judge sustained one of the two defense objections to the physical evidence and excluded the seized heroin (Exhibit 27) which the State sought to admit.
The trial transcript clearly shows that the State called Detective Michael Dal-feres and Sergeant Jeff Sislo to testify regarding the pending charges in New Orleans. Both officers discussed the facts and evidence recovered related to the charges in New Orleans. The defendant did not object at trial to the witnesses’ testimony, and did not request an admonition or a mistrial. Defense counsel also questioned the New Orleans detectives about the facts and circumstances of the pending charges in New Orleans during his cross-examination of them. Since defendant did not object at trial to the testimony of Detective Dalferes and Sergeant Sislo relating to “other crimes,” he may not assert this error on appeal.
During the testimony of Detective Dal-feres and Sergeant Sislo, the State offered and introduced evidence recovered from the pending case in New Orleans. As the State offered each piece of evidence from the New Orleans case individually, the trial court specifically asked if defendant had any objection to its 1 ^admission. With the exception of the apartment key, defense counsel responded “no objection,” after which the trial court admitted the evidence.[5] Additionally, defense counsel entered into a stipulation with the State that if the chemical expert in the New Orleans case would testify, he would testify consistently with the report prepared in that case as far as what substance tested positive for drugs and the weights of each item. After its last witness, the State moved to publish all of the State’s exhibits, including those related to the case in New Orleans. The trial court again asked defense counsel if he had any objection to the exhibits being published, and defense counsel responded “No objection, your honor.” Clearly the defendant consented to admission of the other crimes evidence. Moreover, the trial judge would have had no alternative but to admit it even if its admissibility was in doubt. To hold otherwise would be to require judicial advocacy and activism during a trial, rather than presentation of evidence by the parties and impartiality by the judge.
On very rare occasions, the contemporaneous objection requirement does not apply. In State v. Williamson, 389 So.2d 1328 (La.1980), the trial judge incorrectly instructed the jury on the elements of the crime charged, effectively reducing the state’s evidentiary burden, without defense objection. The omission of an element or elements of the crime charged from the instructions to a jury effectively makes criminal an act which is not a crime, and cannot be allowed to stand even in the absence of a contemporaneous objection. In this case, however, no such extraordinary error was committed by the trial *443 court. In State v. Green, 493 So.2d 588 (La.1986), the Louisiana Supreme Court again applied the exception to the contemporaneous objection requirement for improper instructions 1Mto the jury.[6] Clearly . the introduction of other crimes evidence without objection in this case does not have nearly the same effect on the reliability of the fact-finding process as did the egregious jury instruction errors in Williamson and Green.
In State v. Arvie, 505 So.2d 44 (La.1987), however, the Louisiana Supreme Court emphasized the importance of a contemporaneous objection by refusing to extend the exception to the contemporaneous objection rule for a prosecutor’s reference to the defendant’s post-arrest silence during his cross-examination. If the cross-examination of a defendant regarding his post-arrest invocation of the Fifth Amendment right to remain silent is not reviewable in the absence of a contemporaneous, objection, then neither can be the introduction of other crimes evidence.
Therefore, in the absence of a contemporaneous objection stating the grounds therefore, the admission of the other crimes evidence in this case is not reviewable by this court.
Waiver of Objection Made at Pre-trial Ruling
Although the defendant made a pre-trial objection to the trial court’s granting of the State’s motion to admit the evidence seized in the New Orleans case, the defendant consented at trial to admission of the evidence and therefore waived appeal on that issue.
When a defendant unsuccessfully seeks to exclude certain evidence at a pretrial motion, but at trial agrees to its introduction, he waives his prior objection and loses the right to present the issue on appeal. State v. Gaal, 01-376 (La.App. 5 Cir. 10/17/01), 800 So.2d 938,’ 951, writ denied, 02-2335 (La.10/3/03),. 855 So.2d 294. In this case, defendant objected to the trial court’s La. C.E. 404B pre-trial [ ^ruling allowing the State to introduce evidence from the New Orleans case, but at trial the defendant consented • to the evidence seized in New Orleans which was admitted, stating, “No objection, your hon- or,” after the trial judge asked if he objected. Accordingly, this issue has been waived, has not been preserved for appeal, and may not be reviewed or considered by this Court.
The La. C.E. 404B Motion (“other crimes” evidence) Decision
After a full evidentiary hearing pursuant to La. C.E. 404B, the trial court ruled that evidence of the earlier New Orleans case would be admissible at trial, finding that such evidence-was admissible to show absence of mistake. This conclusion is logical and relevant, especially considering the defendant’s contention that the Metairie apartment was not his and that he had no connection to it, and the implication that the evidence seized in the apartment pursuant the warrant could have belonged to Ms. Williams or to a third party.
In State v. Jones, 08-20, (La.App. 5 Cir. 4/15/08), 985 So.2d 234, this Court held that evidence of other crimes was admissible to show absence of mistake or accident *444 when the defendant implied that the drugs seized belonged to one of two other possible subjects, as in the instant case.
Further, an evidentiary hearing of a 404B motion is determined largely on factual determinations. In deciding a pre-trial motion to admit evidence of other crimes, broad discretion is afforded the trial judge, who. is in a position to view witnesses, assess their credibility, and determine the facts. State v. White, 45,704 (La.App. 2 Cir. 1/26/11), 57 So.3d 1078, writ denied, 11-0613 (La.10/7/11), 71 So.3d 310. We do not believe the trial judge abused his discretion in granting the State’s motion to admit the evidence for the limited purpose he stated in his reasons. He also gave a clear, limiting instruction to the jury as to the “sole purpose” for which they could consider evidence of the New Orleans 11ficase. Therefore, evidence of other crimes generally, and the apartment key specifically, were properly admissible to show intent and absence of mistake or accident, and that the limited purposes for which it was admitted pursuant to La. C.E. 404B was not outweighed by any prejudicial effect. Accordingly, appellant’s assignment of error is without merit.
ERRORS PATENT REVIEW
The record was reviewed for errors patent, according to the mandates of La. C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). The following requires corrective action.
The record reveals a conflict between the commitment and the transcript. The commitment does not reflect that the trial court ordered the habitual offender sentence to run concurrently with the other sentences. However, the transcript reflects that the court ordered the habitual offender sentence on Count 1 to be served concurrently with the other two sentences. Where there is a conflict be- ' tween the transcript and the commitment, the transcript prevails. State v. Lynch, 441 So.2d 732, 734 (La.1983). Therefore, we remand this matter to the trial court with instructions to amend the commitment. The clerk of court is ordered to transmit the original of the commitment to the officer in charge of the institution to which defendant has been sentenced, as well as, to the legal department of the Louisiana Department of Public Safety and Corrections. See State ex rel. Roland v. State, 06-0244 (La.9/15/06), 937 So.2d 846 (per curiam).
CONCLUSION
For the reasons stated herein, defendant’s convictions and sentences are affirmed.
CONVICTION AND SENTENCE AFFIRMED; REMANDED FOR CORRECTION OF COMMITMENT.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

. The white shards did not test positive for any type of narcotic.

. This was defendant’s photo electronic identification card issued by the Transportation Safety Administration (TSA) to insure that employees who have access to secure areas of the nation’s transportation system pose no threat.

. Defendant objected to the apartment key, which linked him to the New Orleans apartment and its contents, which objection was overruled and the key was admitted into evidence. Because the defendant made a contemporaneous objection to the apartment key, his objection was preserved. Therefore, only the discussion of the 404B hearing and waiver of objection thereto below apply to the key (State's Exhibit 30). Defendant also objected to heroin seized from his person (State’s Exhibit 27), which the trial judge sustained and excluded from evidence.

. The trial court admitted the following evidence from the pending case in New Orleans recovered after execution of a search warrant, to which defendant affirmatively stated he did not object: (1) .40 caliber semiautomatic Glock, rounds and a magazine; (2) 12 individual bags of heroin; (3) crack and cocaine powder; (4) anosital; (5) 22 bags of marijuana; (6) an orange pill bottle containing 44 tablets of Alprazolam; (7) two scales; (8) open box of Good Sense sandwich bags; and (9) bag of syringes.

. In Green, the trial judge failed to instruct the jury that the defendant’s prior convictions could only be considered for enhancement of sentence and not for determination' of guilt, without which the statute under which the defendant was prosecuted at the time was facially unconstitutional. Neither is true in this case, in which the trial judge did give the proper limiting instruction to the jury.