STATE OF LOUISIANA

VERSUS

BOBBY L. JAMES

NO. 24-KA-508

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 16-4005, DIVISION "N"
HONORABLE STEPHEN D. ENRIGHT, JR., JUDGE PRESIDING

July 30, 2025

**STEPHEN J. WINDHORST**
**JUDGE**

Panel composed of Judges Susan M. Chehardy,
Stephen J. Windhorst, and E. Adrian Adams, Pro Tempore

<u>**CONVICTIONS AND SENTENCES AFFIRMED; ENHANCED
SENTENCE VACATED; REMANDED FOR CORRECTION OF
UNIFORM COMMITMENT ORDER**</u>
  **SJW**
  **SMC**
  **EAA**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Jalisa Walker
Deputy, Clerk of Court

COUNSEL FOR DEFENDANT/APPELLANT,
BOBBY L. JAMES
     Mary Constance Hanes

COUNSEL FOR PLAINTIFF/APPELLEE,
STATE OF LOUISIANA
     Honorable Paul D. Connick, Jr.
     Juliet L. Clark
     Thomas J. Butler

**WINDHORST, J.**

Defendant, Bobby L. James, appeals his convictions and sentences for second degree murder and attempted armed robbery. For the reasons that follow, we affirm defendant's convictions, the sentence for second degree murder on count one, and the underlying sentence for attempted armed robbery on count two. We vacate the enhanced sentence for attempted armed robbery on count two and remand this case to the trial court for correction of the Uniform Commitment Order ("UCO").

**PROCEDURAL HISTORY**

On August 18, 2016, a Jefferson Parish Grand Jury returned an indictment charging defendant, Bobby L. James, with the second degree murder, in violation of La. R.S. 14:30.1 (count one), and attempted armed robbery of Dwayne Baptiste, in violation of La. R.S. 14:27 and La. R.S. 14:64 (count two). State v. James, 20-366 (La. App. 5 Cir. 01/27/21), 310 So.3d 791, 792. Defendant pled not guilty at his arraignment. Id.

Defendant filed motions to suppress identification and statement, which the trial court denied. Id. The State filed a notice of intent to introduce evidence pursuant to La. C.E. art. 404 B, seeking to introduce evidence relating to an incident that occurred on December 10, 2012, wherein defendant allegedly attempted to commit an armed robbery and burglary and committed a second degree murder. Id. On September 21, 2017, after an evidentiary hearing, the trial court granted the State's 404 B motion. Id.

On October 12, 2017, a twelve-person jury found defendant guilty as charged in ten-to-two verdicts on both counts. Id. at 792-793. Defendant filed a *pro se* motion for post-verdict judgment of acquittal and/or arrest of judgment, which was not ruled upon by the trial court. Id. On November 2, 2017, defendant was sentenced to life imprisonment on count one and forty-nine and one-half years imprisonment at hard labor on count two. Id. Both sentences were ordered to be

24-KA-508                                         1

served concurrently and without the benefit of parole, probation, or suspension of sentence. Defendant appealed. Id. On November 28, 2018, this court vacated defendant's sentences and the matter was remanded to the trial court to rule on defendant's *pro se* motion for post-verdict judgment of acquittal. Id.

On January 10, 2019, on remand from this court and after a hearing, the trial court denied defendant's *pro se* motion for post-verdict judgment of acquittal. Id. The same day, the trial court sentenced defendant to life imprisonment on count one and forty-nine and one-half years imprisonment at hard labor on count two, with the sentences to be served concurrently and without the benefit of parole, probation, or suspension of sentence. Id. On August 6, 2020, defendant filed an application for post-conviction relief requesting an out-of-time appeal, which was granted. Defendant appealed. On January 27, 2021, in his second appeal, this court vacated defendant's convictions and sentences based on Ramos v. Louisiana, 590 U.S. 83, 140 S.Ct. 1390, 206 L.Ed.2d 583 (2020), and remanded the matter for further proceedings. Id. at 793-794.

On October 20, 2022, a twelve-person jury found defendant guilty as charged on both counts. On October 26, 2022, defendant was sentenced to life imprisonment at hard labor on count one and forty-nine years and six months imprisonment at hard labor on count two, with both sentences to run concurrently. The trial court then enhanced defendant's sentence on count two, pursuant to La. R.S. 14:64.3, because of defendant's use of a firearm in the attempted armed robbery. Specifically, the trial court sentenced defendant to an additional five years imprisonment at hard labor on count two to run consecutively to the underlying sentence on count two, and concurrently with the sentence on count one. The trial court ordered defendant's life sentence on count one and the "fifty-four" year sentence on count two to be served without benefit of parole, probation, or suspension of sentence.

This appeal followed.

**EVIDENCE AT TRIAL**

At trial, the State presented evidence to show that on May 3, 2016, defendant committed the attempted armed robbery and second degree murder of Dwayne Baptiste. The State also presented other crimes evidence pursuant to La. C.E. art. 404 B, to show that defendant committed the attempted armed robbery of Sterling Bush and the second degree murder of Cory Bush on December 10, 2012, in Orleans Parish.

*Second Degree Murder and Attempted Armed Robbery of Dwayne Baptiste*

Detective Jean Lincoln testified that on May 3, 2016, at 5:52 P.M., the Jefferson Parish Sheriff's Office (JPSO) received the first of two 9-1-1 calls regarding a shooting at an apartment complex located at 201 West Esplanade Avenue. Detective Lincoln stated that when JPSO arrived at the scene, Dwayne Baptiste, the victim, was still alive and he was transported to the hospital, where he later died. Detective Lincoln asserted that some property may have been taken from the victim, as his pockets were pulled inside out, and no money was found on his person.

Deputy Thomas Gai, formerly with JPSO, testified that he responded to the scene, where he recovered evidence and had photographs taken. Deputy Gai stated that a .40 caliber Winchester cartridge casing was located at the scene, but the firearm which fired the bullet was not found.[1] Detective Lincoln testified that JPSO interviewed numerous witnesses who were at the scene. She stated that after interviewing the witnesses, she was able to obtain a description of the shooter's vehicle, *i.e.* a "[g]ray or silver Acura sedan," and the vehicle did not have a license plate.

---

[1] Prescription medication, a pack of cigarettes, a lighter, a cell phone, and a rag were also collected at the scene.

Timothy Eskine testified that in May of 2016, he lived with his ex-girlfriend, Stacie Dennis; his brother, Kevin Schmidt; and Mr. Schmidt's girlfriend, Jasmine Berry, in a second-floor apartment located at the corner of West Esplanade and Lake Avenue. He testified that the victim, who he knew sold drugs, came over on the day of the incident to smoke marijuana. Mr. Eskine stated that he knew the victim carried a lot of cash. He stated that at some point, Woodnisha Watts, defendant's girlfriend and Ms. Berry's sister, arrived at the apartment but then left. Mr. Eskine recalled that a few minutes later defendant came into the apartment and ordered the victim to "give it up" at gunpoint.[2] According to Mr. Eskine, Ms. Berry began screaming "No, no, Bobbie, what are you doing, don't do it." He recalled that the victim then ran out of the apartment and defendant ran after him.

Mr. Eskine testified that a few seconds later he heard a "pop." When he walked outside of the apartment, he saw the victim lying on the ground and a silver car, like a Honda or an Acura, "pulling off." He identified defendant from a photographic lineup and also made an in-court identification of defendant as the individual who came into the apartment and pointed a gun at the victim.

Ms. Dennis testified that she was living with Mr. Eskine at Mr. Schmidt and Ms. Berry's apartment at the time of the murder. She recalled that on May 3, 2016, the victim, her drug dealer, stopped by to "hang out." She stated that the victim provided her with cash to go to the store for him to pick up food and a cigar. After she returned to the apartment, Ms. Dennis testified that Ms. Watts arrived but then left. Shortly thereafter, Ms. Dennis stated that there was a knock on the door, but before she could answer, defendant walked in. She testified that once defendant was inside the apartment, he pulled out a handgun, pointed it at the victim, and stated "Give me everything that you have."

---

[2] Mr. Eskine testified that he had met defendant prior to the night in question at a birthday party.

According to Ms. Dennis, Ms. Berry screamed, "No, Bobby, no." Ms. Dennis testified that she then ran out of the apartment, followed by the victim and defendant. She asserted that the victim passed her up, making it halfway down the stairs before defendant shot him. Ms. Dennis recalled that after the shooting, defendant left the scene in a gray Acura. She testified that she called 9-1-1 and ran to Roneika Henry's house (the victim's girlfriend). Ms. Dennis identified defendant in a photographic lineup and in court as the person who tried to rob the victim and shot him.

Ms. Berry testified that she and her boyfriend, Mr. Schmidt, were living at 201 West Esplanade on the date of the shooting and that she allowed Ms. Dennis and Mr. Eskine to sleep there. She stated that she was out walking her dog and not at the apartment when the victim was shot. She could not recall whether her sister, Ms. Watts, went to her (Ms. Berry's) apartment on the day in question and stated that she did not see defendant at all on the day of the murder. Ms. Berry claimed that when she returned home from walking her dog, there was no one present and when further questioned about the incident, she advised that she knew nothing about the shooting.

Ms. Berry further claimed she could not recall anything she told the police on the night of the shooting. After reviewing her statement, she claimed she could not remember telling the police (1) that the victim was in her apartment; (2) that while the victim was there, Ms. Watts called and said she was downstairs; and (3) that when her sister came inside the apartment, she heard the victim ask her sister to get a cigarette for him from defendant who was outside in an Acura. Ms. Berry further testified that she could not remember saying she saw defendant come through the door with a gun and demand that the victim give him "what you got on you," nor could she recall telling the police that defendant left the scene in an Acura.

Ms. Berry admitted that she heard the gunshot, but claimed she did not know where it came from or who fired it. Ms. Berry further claimed that she picked

defendant out of a photographic lineup because it was "my brother-in-law." She claimed that she did not state that defendant was holding a gun because she was not there and she did not see anything. However, in her statement, Ms. Berry identified defendant as the person who entered her apartment with a gun aimed at the victim.

Larry Constant testified that he was an acquaintance of the victim and that they knew each other from the neighborhood. He assumed the victim sold drugs for a living based on his observations. Mr. Constant testified that on the day of the murder, he was outside his residence at 1501 Lake Avenue, in the neighborhood known as Bucktown, when he heard arguing and yelling coming from the apartment complex across the street and then a gunshot. He stated that he saw the victim stumble out of the doorway, turn around, and put his hands up as if begging, before he fell to the ground. Mr. Constant asserted that he ran across the street to render aid, and as he did so, he observed a tall, slender African American male, carrying what he believed to be a handgun, jump over the victim's body and get into a silver, two-door vehicle before fleeing the scene.

Mr. Constant testified that he ran back to his residence, retrieved his phone, and called 9-1-1. Upon his return, Mr. Constant stated he saw other people at the scene and he noticed that the victim's shirt had been pulled up and that his pants had been pulled almost all the way down. Among the people standing outside, he recognized a female from the neighborhood named Jasmine, whom he believed was behaving in an unusual manner. Specifically, she was defending herself to those around her by stating that she was not involved.

Detective Lincoln testified that defendant was arrested approximately eight hours after the shooting. She stated that she also discovered that there was a phone call made from a phone associated with defendant to Ms. Watt's cell phone at 5:47 P.M., five minutes prior to the first 9-1-1 call. Detective Lincoln indicated that the

call made from this cell phone utilized a cell phone tower five blocks from where the shooting occurred.[3]

Detective Lincoln further testified that she interviewed and took a statement[4] from defendant the same night he was arrested.[5] Defendant's statement was played for the jury and the State questioned Detective Lincoln regarding the same. She recalled that during the interview, defendant advised her that he owned a silver 2002 Acura, that it did not have a license plate, and that it was at his aunt's house. Detective Lincoln stated that they were unable to locate the Acura. Detective Lincoln confirmed that defendant initially denied being in the vicinity of Ms. Berry's apartment on the day of the shooting, but later admitted that he had lied about that. In his statement, defendant admitted that he actually was at the apartment complex, but stated that he did not go into the apartment and only sat in his car in the parking lot. He further explained that he initially lied to the detective because he had previously served twenty-seven months in prison for a 2012 murder he did not commit.

Jene Rauch, an expert in firearms and toolmark examination, shooting incident reconstruction, and blood stain pattern analysis, testified that she examined the physical evidence and photographs taken of the scene. Based on this evidence, Ms. Rauch concluded that the shooter fired the weapon from inside the stairwell in a downward angle. Ms. Rauch testified that since the murder weapon was never recovered, it could not be tested and compared to the casing found at the scene.

Dr. Dana Troxclair, an expert in forensic pathology, stated that the victim's autopsy was performed by Dr. Marianna Eserman. She testified that the victim died as a result of a gunshot wound to the chest caused by a bullet entering his right upper

---

[3] Defendant's cell phone and the murder weapon were not recovered.

[4] The State and defense stipulated that certain portions of the audio and video statement were not relevant and would not be played for the jury.

[5] Deputy Gai testified that a search warrant was executed at defendant's residence on Sullen Place in New Orleans on the night of his arrest and that a live .40 caliber Winchester cartridge was found.

back and exiting near his collarbone.  Dr. Troxclair stated that toxicology results revealed the presence of marijuana and Tramadol in the victim's body.

*La. C.E. art. 404 B other crimes evidence: the 2012 Orleans Parish incident*

Sterling Bush testified that on December 10, 2012, he was robbed at gunpoint, and his nephew, Cory Bush, was shot and killed.  Mr. Bush testified that at the time of the murder, his nephew was living with him at his home in Algiers.  On that night, Mr. Bush recalled that he was taking out the trash when three men came up behind him and put a gun to his head.  Mr. Bush stated he was forced inside his home where he led the men to his bedroom to retrieve money.  Upon exiting the room, the men encountered Mr. Bush's sister in the hallway and ordered them to the ground.  Mr. Bush testified that he heard gunshots and got on top of his sister to shield her from harm.  After the shooting stopped, Mr. Bush observed that his nephew had been shot and was lying near the front door.  Mr. Bush testified that he was able to observe the face of the assailant who took his money "clear as day," whom he later identified from a photographic lineup as the defendant, Bobby James.  He also identified defendant in court.  Mr. Bush indicated that he recognized defendant from the neighborhood.

Mr. Bush further testified that he believed the perpetrators were not strangers because one of them called him by his nickname, "Magoo."  He also stated that he suspected the assailants were familiar with his house because they fled out a back door that only a few people knew about.

**PROCEDURAL ISSUE**

Initially, as a procedural matter, we must address defense counsel's second motion to supplement the record.

On November 6, 2024, defense counsel filed a motion to supplement the current appellate record (24-KA-508) with the records of defendant's two prior appeals in case numbers 18-KA-212 and 20-KA-366.  On that same date, a panel of

this court, citing La. U.R.C.A., Rule 2-1.7, denied the motion, finding that because neither record was introduced or offered into evidence during defendant's second trial, they did not properly form part of the record in this, defendant's third appeal.

On January 16, 2025, defendant's counsel filed a second motion to supplement the record. In that motion, defendant's counsel again requested that the record be supplemented with the records in defendant's two prior appeals or alternatively, that the record be supplemented with the February 7, 2017 notice of intent filed by the State pursuant to La. C.E. art. 404 B and the transcript of the September 21, 2017 hearing found in case number 18-KA-212. On January 17, 2025, a duty judge of this court referred the motion to the merits panel for resolution.

U.R.C.A., Rule 2-1.7, provides in pertinent part:

> No record of another case (or prior record in the same titled and numbered case) shall be included in the record, unless such other record has been introduced into evidence at the trial court in the case on appeal, or on writs, and such other record shall accompany the record as an exhibit.

Based on the foregoing, we deny counsel's second motion to supplement the current record with the records in case numbers 18-KA-212 and 20-KA-366, or alternative request to supplement the record with the State's notice of intent and the September 21, 2017 transcript, because neither record, including the State's notice of intent and the September 21, 2017 transcript, was introduced into evidence during defendant's second trial, which is now before us on appeal. Consequently, we find those records do not properly form part of the record in the present appeal.

**LEGAL ANALYSIS**

In his sole assignment of error, defendant contends that the trial court abused its discretion in granting the State's La. C.E. art. 404 B motion, and by admitting other crimes evidence of an incident that occurred in Orleans Parish on December 10, 2012, related to the armed robbery of Sterling Bush and the shooting death of Cory Bush (hereinafter "the 2012 Orleans Parish incident"). Defendant argues that

the 2012 Orleans Parish incident is not similar to the instant offense and that any probative value was greatly outweighed by the prejudice caused by introducing another armed robbery involving a shooting death.

The transcript shows that during opening statements at defendant's October 2022 trial, the State discussed the 2012 Orleans Parish incident. Defendant's trial counsel did not lodge a contemporaneous objection at that time. Instead, defendant's trial counsel waited until after the jurors were dismissed at the end of the day to lodge an objection to the State's reference to the other crimes evidence during its opening statement. Defense counsel stated that his objection was "just for record purposes" and he did not state any specific grounds for the objection. Later during the trial, immediately prior to Mr. Bush's testimony regarding the 2012 Orleans Parish incident, defendant's trial counsel stated, "Judge, while we're outside the presence of the jury, I just want to lodge my objection again to any testimony about the New Orleans issues, for the record." The trial judge responded, "Sure." Again, defendant's trial counsel did not specify any grounds for the objection.

In order to preserve the right to seek appellate review of an alleged trial court error, the party claiming the error must state an objection contemporaneously with the occurrence of the alleged error, as well as the grounds for that objection. La. C.Cr.P. art. 841. State v. Lane, 20-137 (La. App. 5 Cir. 12/23/20), 309 So.3d 886, 907, writ denied, 21-100 (La. 04/27/21), 314 So.3d 836. A defendant is limited on appeal to matters to which an objection was made, but also to the grounds for his objection articulated at trial. Id. The requirement of a contemporaneous objection is to put the court on notice of an alleged irregularity so that opposing counsel may respond on the issue, and the trial judge may cure a legitimate problem, and to prevent the defendant from gambling for a favorable verdict and then resorting to appeal on errors that might easily have been corrected by an objection. State v. Anthony, 17-372 (La. App. 5 Cir. 12/30/20), 309 So.3d 912, 927, writ denied, 21-

176 (La. 10/12/21), 325 So.3d 1067, <u>cert. denied</u>, 598 U.S. ⸺, 143 S. Ct. 29, 214 L.Ed.2d 214 (2022); <u>State v. Patin</u>, 13-618 (La. App. 5 Cir. 09/24/14), 150 So.3d 435, 441-441, <u>writ denied</u>, 14-2227 (La. 04/22/16), 191 So.3d 1043; <u>State v. Devillier</u>, 17-572 (La. App. 5 Cir. 10/17/18), 258 So.3d 230, 261, <u>writ denied</u>, 18-1855 (La. 10/08/19), 280 So.3d 589.

Here, the transcript shows that defendant's counsel did not lodge a contemporaneous objection when the State mentioned the other crimes evidence during it's opening statement, nor did he state the grounds for his objection. When evidence of the 2012 Orleans Parish incident was admitted during trial, defense counsel made a timely objection, but stated no grounds for the objection or why the 404 B ruling was wrong. Nor was the transcript of the 404 B hearing offered into evidence. Therefore, we find that the issue was not been preserved for appeal under La. C.Cr.P. art. 841.

When pre-trial motions have been heard and a ruling has been rendered before a defendant's first trial, the defendant is ordinarily not entitled to have the earlier motions re-heard or reconsidered prior to a second or subsequent trial, absent a clear showing of good cause. However, the trial court may, in its discretion, grant a new hearing for good cause. See <u>State v. Woods</u>, 23-41(La. App. 5 Cir. 11/15/23), 376 So.3d 1144, 1158; <u>State v. Cole</u>, 83-1012 (La. 06/27/83), 434 So.2d 1103. In this case however, neither the State nor defendant requested a rehearing or reconsideration, or moved for any pre-trial ruling by the trial court to admit or exclude any other crimes evidence after remand and prior to the second trial, which is the subject of this appeal. The only 404 B ruling on the 2012 Orleans Parish incident of other crimes evidence was prior to the first trial in 2017.

Even if we consider both of defense counsel's objections as timely, both objections were made without stating any specific grounds, giving no reason for the trial court to reconsider or change its earlier ruling. Generic objections, or objections

made simply "for the record" and without grounds, are wholly insufficient to satisfy the contemporaneous objection rule, particularly when objecting to a prior ruling of the court after a contradictory hearing.

Nevertheless, on review of the record, we can find no merit to defendant's argument. Generally, evidence of other crimes or bad acts committed by a criminal defendant is not admissible at trial. La. C.E. art. 404 B(1); State v. Prieur, 277 So.2d 126, 128 (La. 1973). However, when evidence of other crimes tends to prove a material issue and has independent relevance other than to show that the defendant is of bad character, it may be admitted by certain statutory and jurisprudential exceptions to this rule. State v. Williams, 10-51 (La. App. 5 Cir. 07/27/10), 47 So.3d 467, 474, writ denied, 10-2083 (La. 02/18/11), 57 So.3d 330. Evidence of other crimes is admissible to prove motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding to such an extent that the State could not accurately present its case without reference to the prior bad acts. La. C.E. art. 404 B(1); State v. Lawson, 08-123 (La. App. 5 Cir. 11/12/08), 1 So.3d 516, 525. In State v. Taylor, 16-1124 (La. 12/01/16), 217 So.3d 283, 288, the Louisiana Supreme Court referred to La. C.E. art. 404 B as "a non-exclusive list of instances wherein such evidence may be admissible."

In order for other crimes evidence to be admitted under La. C.E. art. 404 B(1), the evidence must be independently relevant for purposes such as the factors enumerated therein, or must be at issue, or must be an element of the crime charged. Lawson, 1 So.3d at 525-26. Even when independently relevant, the evidence may be excluded if its probative value is substantially outweighed by the dangers of unfair prejudice, confusion of the issues, misleading the jury, considerations of undue delay or waste of time. La. C.E. art. 403. When seeking to introduce evidence pursuant

to the rule governing the admissibility of other crimes evidence, the State need only make a showing of sufficient evidence to support a finding that the defendant committed the other crime, wrong, or act. Taylor, 217 So.3d at 291.

The defendant bears the burden to show that he was prejudiced by the admission of the other crimes evidence. State v. Miller, 10-718 (La. App. 5 Cir. 12/28/11), 83 So.3d 178, 187, writ denied, 12-282 (La. 05/18/12), 89 So.3d 1191, cert. denied, 568 U.S. 1157, 133 S.Ct. 1238, 185 L.Ed.2d 177 (2013). Absent an abuse of discretion, a trial court's ruling on the admissibility of evidence pursuant to La. C.E. art. 404 B(1) will not be disturbed. Id.

### *Harmless Error Analysis*

Even if the trial court erred in allowing admission of the evidence, the erroneous admission of other crimes evidence is subject to a harmless error analysis. State v. Williams, 05-318 (La. 01/17/06), 921 So.2d 1033, 1036, writ denied, 06-973 (La. 11/03/06), 940 So.2d 654. An error is harmless when the verdict is "surely unattributable to the error." State v. Massey, 11-358 (La. App. 5 Cir. 03/27/12), 97 So.3d 13, 29, writ denied, 12-993 (La. 09/21/12), 98 So.3d 332.

Based on the record before this court, we cannot say that the trial court abused its discretion in allowing the State to present evidence of the 2012 Orleans Parish incident. We further conclude that any error in the admission of the other crimes evidence was harmless. In this case, there was ample evidence to support defendant's convictions without consideration of the 2012 Orleans Parish incident. Both Mr. Eskine and Ms. Dennis testified that they observed defendant enter the apartment, point a gun at the victim, and demand that the victim give defendant everything he had, after which defendant shot the victim as the victim was running away. There was additional evidence, direct and circumstantial, which pointed to the defendant's guilt. Consequently, we find the guilty verdicts of attempted armed robbery and second degree murder were surely unattributable to the evidence

concerning the 2012 Orleans Parish incident. Accordingly, this assignment of error is without merit.

**ERRORS PATENT**

The record was reviewed for errors patent according to the mandates of La. C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La. 1975); and State v. Weiland, 556 So.2d 175 (La. App. 5 Cir. 1990). We find the following errors patent.

Our review shows that the trial judge erred by enhancing defendant's attempted armed robbery sentence (count two) under La. R.S. 14:64.3 B. That statute provides for an additional period of five years imprisonment without benefit of parole, probation, or suspension of sentence, to be served consecutively to the sentence imposed by La. R.S. 14:64 and La. R.S. 14:27, when the weapon used in the commission of the crime of attempted armed robbery is a firearm and the State provides written notice of its intention to seek enhancement of the sentence under that statute, or includes the enhancement in the bill of information or indictment. In this case, the State did not file written notice that it intended to seek enhancement of the sentence under La. R.S. 14:64.3 or charge defendant with a violation of that statute in the bill of information. See State v. Smith, 19-395 (La. App. 5 Cir. 03/13/20), 293 So.3d 732, 742-743. Accordingly, we vacate defendant's five-year enhanced sentence on attempted armed robbery (count two) and remand for correction of the UCO.

Further, the transcript reveals that the trial court did not provide defendant with the time limitation for seeking post-conviction relief as required by La. C.Cr.P. art. 930.8. If a trial court fails to advise, or provides an incomplete notice, pursuant to La. C.Cr.P. art. 930.8, this court may correct this error by informing the defendant of the applicable prescriptive period for post-conviction relief by means of its opinion. State v. J.E., 19-478 (La. App. 5 Cir. 09/02/20), 301 So.3d 1262, 1278. Therefore, defendant is hereby informed that no application for post-conviction

relief, including applications which seek an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under the provisions of La. C.Cr.P. arts. 914 or 922.

**DECREE**

For the reasons stated herein, we affirm defendant's convictions, the sentence for second degree murder on count one, and the underlying sentence for attempted armed robbery on count two. However, we vacate the enhanced sentence for attempted armed robbery on count two and the matter is remanded to the trial court for correction of the UCO.

**<u>CONVICTIONS AND SENTENCES AFFIRMED; ENHANCED SENTENCE VACATED; REMANDED FOR CORRECTION OF UNIFORM COMMITMENT ORDER</u>**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
STEPHEN J. WINDHORST
JOHN J. MOLAISON, JR.
SCOTT U. SCHLEGEL
TIMOTHY S. MARCEL

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
CHIEF DEPUTY CLERK

LINDA M. TRAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **JULY 30, 2025** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

CURTIS B. PURSELL
CLERK OF COURT

**24-KA-508**

### E-NOTIFIED
24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE STEPHEN D. ENRIGHT, JR. (DISTRICT JUDGE)
MARY CONSTANCE HANES (APPELLANT)     ANDREA F. LONG (APPELLEE)         JULIET L. CLARK (APPELLEE)
THOMAS J. BUTLER (APPELLEE)

### MAILED
HONORABLE PAUL D. CONNICK, JR.
(APPELLEE)
DISTRICT ATTORNEY
TWENTY-FOURTH JUDICIAL DISTRICT
200 DERBIGNY STREET
GRETNA, LA 70053